## IGNATIUS TYLER & others *vs.* JOSHUA MATHER.

On the death of some of the complainants, pending a complaint on the Rev. Sts. *c.* 116 for flowing land, the survivors alone may prosecute the suit, though some of the deceased complainants were tenants in common with some of the survivors.

On a complaint upon the Rev. Sts. *c.* 116, the respondent, under a plea of the general issue, with a specification of defence that he has a right to keep his dam at the height complained of, cannot at the trial deny the complainant's title to the land flowed.

On the trial of a complaint for flowing land, the declaration of a former owner of the dam that a certain stone marked the height of his right to flow, is admissible in evidence for the complainant, without proof that such declaration did not refer to other land above the dam and below the land of the complainant.

On the trial of a complaint for flowing land, brought in 1850, the defence to which is prescription since 1823, evidence is not admissible that a former owner of the dam paid money in 1838 as damages for flowing land other than that of the complainant.

On the trial of a complaint for flowing land, brought in 1850, the defence to which was prescription since 1823, the complainant gave in evidence a deed made in 1837, of land above the dam, granting to the owner of the dam a right to flow the land to a certain height. *Held*, that the owner of the dam might show that the flowing mentioned in the deed was caused by raising the dam in 1823, and that annual damages had been paid therefor to the grantor from 1823 to 1830.

On the trial of a complaint for flowing land, the respondent may prove that a causeway above the dam and below the land flowed, by reason of having been raised since the commencement of the suit, operates as a dam.

Upon the trial of a complaint for flowing land, a witness called by the respondent testified on cross-examination that the complainant and other owners of the land flowed chose a committee to procure a survey of the stream. *Held*, that this did not authorize the respondent to give in evidence the report of the committee, or the fact that such landowners subsequently cleared out the stream.

On the trial of a complaint for flowing land, a declaration of the warrantor and grantor of the respondent (who has assumed the defence of the suit) as to the right of flowing, is not admissible in evidence, if made when he had no interest either in the dam or the land above it.

On the trial of a complaint for flowing land, brought in 1850, the respondent contended that his dam had not been raised since 1823, and that he had a right to maintain it as it then stood; and the complainant contended that it had been raised since 1832. The court instructed the jury that if the dam had existed for any twenty years previously to the date of the complaint at the same height at which it then stood, they should find for him; but if it had not been maintained at said height for any twenty consecutive years previously to said date, they should find for the complainant; and no objection was made to the instructions at the time. *Held*, that the respondent had no ground of exception.

COMPLAINT on Rev. Sts. *c.* 116, entered at September term 1850 of the court of common pleas, and alleging that the respondent had maintained and kept up a dam across Hale's

Brook in Lowell since the 23d of February 1850, and thereby flowed and injured the lands of the complainants.

The respondent answers " that he will claim a trial before a jury of this honorable court, at the bar of said court, and for specification of his defence at such trial says, 1st. He will plead the general issue, and rely upon any and all matters in defence which he is legally entitled to avail himself of under that plea. 2d. He further says, that he has a right to keep up his dam at the height it had been during the time complained of, and to raise and flow back the water thereby, without paying compensation or damages therefor."

Before the trial the deaths of four of the complainants were suggested, but there was no appearance of any of their representatives. The respondent pleaded the general issue, concluding to the country; and the complainant joined the issue.

At the trial at September term 1857 before *Morris*, J., the respondent objected to proceeding upon the then state of the complaint and pleadings; particularly as one of the deceased complainants was tenant in common with one of the survivors and another of the deceased complainants was tenant in common with two others of the survivors, and damages were claimed for the whole land thus held in common. But the judge allowed the complainants to proceed without amendment.

After the complaint was read, the respondent called upon the complainants to prove their title to the land alleged to be flowed. The complainants contended that this was not a civil action; that no general issue could be pleaded in it, but the respondent must plead his defence specially in bar. But the judge ruled that, under the pleadings in the case, the complainants need not prove title to the lands flowed.

It appeared that the dam of the respondent was built across Hale's Brook, and that a dam had existed upon the same spot before the beginning of this century; and that in 1823 Moses Hale, a former owner of the dam and mill privilege, built a dam upon the site of the old dam which raised the water at that point higher than it had been before that time. There was con-

flicting evidence upon the question whether the dam had been altered since 1823 so as to raise the water higher, except temporarily from 1836 to 1840.

The complainants were permitted, against the respondent's objections, to prove that Hale, before 1827, pointed out a stone in the pond to one of his workmen as a water mark of his right to flow the meadows, saying that said stone was the mark for him to keep his water at; and directed him, when the water rose above the stone, to hoist the saw-mill gate and work the water down to the stone.

The complainants were also permitted, against objection, to introduce testimony that the former proprietors paid money during the years 1836, 1837 and 1838, as damages for flowing and for the purchase of other land bounded on this brook, which the witness stated, on cross-examination, was to avoid law suits and own the land.

The complainants offered a deed from the heirs of Butterfield, dated December 20th 1837, granting to the former proprietors of the dam the privilege of flowing their lands to a certain height named in the deed, and proved the deed by a witness. The respondent offered to prove by the same witness that the flowing mentioned in the deed was caused by raising the dam in 1823, and that annual damages had been paid therefor to the ancestor of said heirs from 1823 to the time of his death, prior to 1830. But the judge rejected this testimony.

It appeared that a causeway across the meadows of the brook connected with a bridge over the stream had been raised since the commencement of this suit; and the respondent offered to show that it now operated as a dam, upon the stream, by tests and observations made since the service of the complaint. But the court rejected the evidence.

A witness called by the respondent having testified on cross-examination that in 1832 the owners of the meadows chose a committee to procure a survey of the brook and the taking of levels upon it; the respondent offered in evidence the report of said committee, showing the action of the meadow owners, (among whom were several of these complainants,) and that

they, by a subscription among themselves, cleared out the brook. But the judge ruled the report inadmissible. The certificate of said levels was afterwards put in by the complainants without objection.

Oliver M. Whipple, the respondent's grantor and warrantor, had taken upon himself the entire defence of this suit. The complainants, in order to prove that the proprietors of the dam complained of kept the water back by raising their dam, and so deprived him of the usual and natural run of the stream, offered testimony that Whipple in 1837 or 1838 owned the privilege next below this dam, and had leased it to the witness, and told him that the owners of the dam complained of had no right to raise the water above a certain rock in the pond, because they had raised their dam. The respondent objected to the evidence of the declaration of Whipple, because it did not appear that at the time of making the declaration he had any connection with or interest in this dam or privilege. But the judge admitted the testimony.

Upon all the testimony in the case the complainants contended that the dam had been raised since 1832; and the respondents contended that it had not been raised since 1823, and that they were entitled to maintain it at the height at which it then stood and at which it stood at the date of the complaint.

The jury returned a verdict for the complainants under the following instructions: "If the respondent had shown that his dam, as it stood on the date of the complaint, had existed at the same height for any twenty consecutive years previously to that time, their verdict should be upon the pleadings for the respondent; but if it had not been maintained for any such period at the height at which it stood on that day, no prescriptive right had been gained, and they should find a verdict for the complainants."

The respondent made no objection to these instructions at the time, and did not request any different instructions upon this point; but at the hearing in this court upon exceptions to the rulings and instructions at the trial, contended that the jury

should have been instructed that the respondent had a right to maintain his dam as it existed in 1823, the time of its being rebuilt, and in 1830, twenty years before the date of the complaint; and that as the bill of exceptions showed that he had taken this ground at the trial, it was the duty of the judge to have instructed them upon this point.

*T. Wentworth*, for the respondent.

*B. F. Butler & D. S. Richardson*, for the complainants.

MERRICK, J.   1. The objection interposed by the respondent, after the death of several of the persons who had originally been joined as complainants in the complaint had been suggested, that the remaining complainants could not in the then state of the complaint be maintained, was rightly overruled.   The provisions of the statute upon this subject are decisive of the question.   It expressly declares that no complaint for the flowing of lands by the owner of a mill shall be abated by reason of the death of any party thereto, but may afterwards be prosecuted or defended by the surviving complainants or respondents, or by the executors or administrators of the deceased.   Rev. Sts. *c.* 116, § 43.   This positive regulation is a sufficient answer to the objection, and to the suggestion concerning the supposed difficulties which may arise in the final protection and adjustment of the respective claims of the several parties.   If the complainants shall succeed in maintaining their suit, it will be within the authority of the court to direct the entry of the judgment in such form as may be found necessary to secure the rights of all persons who are interested in it.

2. The respondent had no right, under the pleadings in this case, to insist that the complainants should prove their title to the premises described in the complaint, nor were they required to produce any evidence in relation to it.   In processes instituted under its provisions, the statute allows any matter to be pleaded in bar, which will show that the complaint cannot be maintained.   It is to the issue which is raised upon the pleadings thus authorized, that the trial in court and the evidence produced thereon are to be confined.   The respondent availed himself of the privilege to which he was entitled, by pleading the general issue,

and filing at the same time a specification of defence in which he set forth that he had a right to keep his dam, and flow back the water raised by it, up to the height at which it had at any time been during the whole of the period wherein it was alleged that it had been the cause of injury or damage to the complainants. This specification indicated the only matter of defence upon which he intended to rely, and limited him upon the trial to inquiries concerning, and an investigation of, that question only. He had no right under his plea, restricted as it was by an allegation of a special ground of defence, to insist upon or to avail himself of any other. Rev. Sts. *c.* 116, § 9. *St.* 1836, *c.* 273. *Henderson* v. *Adams*, 5 Cush. 611.

3. The testimony concerning the representations of Hale, as to the extent of his claim of right to flow the meadows above his dam, was properly admitted. At the time he made the statements which were put in evidence by the complainants, he was the owner and occupant of the mill and dam; and it is in part through, under and by means of his occupation, and of his exercise of the rights of flowing claimed by him as such proprietor, that the respondent attempted to show that the right to flow the lands above the dam, as alleged in his specification, had been gained by prescription. It was suggested by his counsel at the argument, that there were other meadows above the dam, beside the lands belonging to the complainants, to which it was at least possible that Hale referred in the directions which he gave to the persons in his employment. If this were so, it would afford no sufficient reason for the exclusion of the evidence, but would be only a matter for the consideration of the jury in estimating its value and effect. 1 Greenl. Ev. § 189.

4. The evidence which the complainants were allowed to introduce for the purpose of showing that former proprietors of the mill paid money in the years 1836, 1337 and 1838 to owners of lands, other than the premises described in the complaint, for the purchase, and for the payment of damages occasioned by the flowing thereof, should have been excluded. Such payments for such purposes had no relation to the precise question at issue between the parties. The exceptions do not disclose, nor

do any inquiries appear to have been made at the trial to ascer-
tain what their rights in relation to those other lands respectively
were. And without such explanation it is obvious that these
payments could have no tendency to prove what was the height
of the dam in the year 1823, or whether it had subsequently
been in any manner changed. These facts would only show
that certain landowners claimed compensation for some injury
alleged to have been occasioned by the inundation of their lands,
and that their claims were acquiesced in and submitted to by
the proprietors of the mill; but would afford no evidence, either
of the degree of damage actually sustained, or of the height of the
dam by which it was produced. Even if it was as high in 1823
as it was when those purchases and payments were made, or as
it has been at any subsequent period, it is not pretended that
the respondent had at that time acquired a prescriptive or other
right to flow the lands of the complainants by means of a dam
raised to that height. If any one of the complainants had as
early as the year 1838 required the payment of compensation
for damages caused to their lands by the maintenance of such
a dam, it is perfectly clear that the defence now interposed and
relied on could not have been resorted to; for if the respondent
has any such right as that upon which he insists, it has been
acquired by an uninterrupted adverse occupation, which com-
menced before, and has been perfected only by long subsequent
enjoyment.

5. The testimony of the witness, by whom the execution of
the deed from the heirs at law of Butterfield to the former pro-
prietors of the mill, introduced by the complainants, was proved,
which was offered by the respondent to show that the flowing
mentioned in that deed was caused by increasing the height of
the dam in 1823, should have been admitted. The respondent
contended that the dam had never been increased in height at
any time subsequently to that year. But this deed from the heirs
of Butterfield might, if the description contained in it was left
unexplained, have been considered as affording some evidence
that the height of the dam was increased at a later period; and
that it was this increase which caused the damages for which

payments were made annually during the life of Butterfield, and for the release of any future claims to which that deed was executed. It was therefore clearly within the right of the respondent to show that all those damages were caused by the dam just as it stood in 1823, and not at all by any addition which was subsequently made to it.

6. The evidence as to the observations made and the tests applied to ascertain the effect of the causeway in the interruption of the passage of the water, and the consequent flooding of the lands above it, though after it had been raised more and higher than it had formerly been constructed, and since the institution of this suit, should have been admitted. It would very plainly be directly applicable to the subject of inquiry involved in the issue, if the respondent should also show how much the causeway had in fact been raised in height, because, upon that proof, a comparison could readily be instituted as to its effect both before and after its increase. And this, though it is not so expressly asserted in the bill of exceptions, but only results by implication from its statements, we understand to have been the purpose of the respondent; and it is in this view that the ruling by which the evidence was rejected is held to be erroneous.

7. The report of the committee appointed by the owners of the meadows bordering on the stream, and the evidence of their action in clearing out the brook in 1832, which were offered by the respondent, were wholly irrelevant to the question upon which the parties were at issue, having no tendency to show that any change had been made in the height of the dam since 1823, but only that the owners attempted to prevent their lands from being injuriously affected by water raised by it in its then existing condition.

8. The ruling that the declarations of Whipple, made under the circumstances stated in the bill of exceptions, were admissible, was erroneous. At the time when he had the conversation of which testimony was allowed to be given to the jury, he had no interest of any kind in the mill or dam or lands above it It is true that he has now taken upon himself the defence of

Tyler & others *v.* Mather.

the suit, and has become responsible to the respondent for whatever judgment may be rendered in it against him. But the principle which makes the admissions of persons, not parties to the record, yet interested in the event of the suit, competent evidence, restricts the proof to such statements and declarations only as were made at times when they had some interest in the matter in controversy. 1 Greenl. Ev. § 180. Applying this restriction to the evidence of the declarations of Whipple, it is obvious that those which were proved, having been made before his interest accrued, were inadmissible and should have been excluded.

9. The respondent has no cause of complaint, which he can now be allowed to urge, against the instructions given to the jury in relation to the time within which a right to flow the lands of the complainants could have been acquired. He made no objections whatever upon the subject at the trial. He did not then suggest any dissatisfaction with those instructions, or request any modification of them by the court. This silence must be taken to have been intended as a signification of his acquiescence in the correctness and propriety of the rule as applicable to the facts in evidence and the course of proceeding on the trial. But even if this were otherwise, the instructions, when considered in that view, were we think sufficiently full and explicit, and well adapted to the question at issue which was submitted to the jury.

Some part of the rulings of the court, objected to by the respondent, being erroneous, the exceptions must be sustained, and a                                        *New trial ordered.*